**FILED**
JAN 28 2019
CLERK, U.S. ...RT
WESTERN DISTRICT OF TEXAS
BY_____
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GEVERS INVESTMENT, INC., a Texas Corporation D/B/A STANLY'S ICE HOUSE, and<br>JAMAL SHADOUH, an Individual,<br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Defendant. | SA19CA0071<br><br>CIVIL ACTION NO. _____<br><br>COMPLAINT |

The Plaintiffs, GEVERS INVESTMENT, INC., a Texas Corporation d/b/a STANLY'S ICE HOUSE, and JAMAL SHADOUH, an Individual, by and through their undersigned counsel and hereby file this Complaint against the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

**FACTUAL BACKGROUND**

1. The Plaintiffs own and operate a small retail store in San Antonio, Texas, named Gevers Investment, Inc. d/b/a Stanly's Ice House (hereinafter "Stanly's"). The store, has been a neighborhood staple, and functions as a small grocery store for local residents.

2. Located in Texas' 20th Congressional District, Stanly's serves a community where an estimated 47.0% of the local residents are below the poverty level and has approximately 36,767 Supplemental Nutrition Assistance Program ("SNAP") benefit households that receive SNAP benefits. Of those participant households, approximately 65.4% have children under eighteen years of age (compared to only 32.4% of those households who do not receive SNAP benefits). The vast majority of this population are participants in the Supplemental Nutrition

Assistance Program[1] (also referred to as SNAP), formerly known as Food Stamps, which is overseen by the Food & Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA").

3.  Accordingly, Stanly's accepts EBT payments and participates in the SNAP program in order to better serve its customer base.

4.  On July 26, 2018, the USDA, through the FNS, sent the Plaintiffs a Charging Letter (**Exhibit A** hereto) pursuant to 7 C.F.R. §278.6, alleging a series of violations on the part of the Plaintiffs in their acceptance of SNAP benefits from participants. The transactions listed by the Defendant in the Charging Letter occurred between January 2018 and June 2018.

5.  As a result, the store lost a considerable portion of its gross revenue (including revenue derived from SNAP) and a substantial portion of its clientele.

6.  Accordingly, the Plaintiffs filed an Administrative Review as permitted by 7 C.F.R. §279, and presented arguments and evidence in support of their position. The Plaintiffs took issue not only with the disqualification process and the inaccuracy of the evidence against them, but also with the comparative lack of direct evidence that any violations of SNAP retailer policies had occurred.

7.  The Plaintiff submitted its brief in support of its appeal to the Administrative Review Division on or about **November 20th, 2018**. The Department has not responded, and with the pending government shutdown, it is not apparent when/if such response will be completed anytime in the immediate future.

8.  This Complaint has been filed specifically pursuant to 7 U.S.C. §2023(17) which in pertinent part permits this Court to enter a preliminary injunction during the pendency of a

---

[1] See USDA Publication of January 2018, Profile of SNAP Households: Texas Congressional District 20.

review. See *Lazaro vs. U.S. Department of Agriculture*, 186 F.Supp2.d 1203 (M.D. FL 2001) discussing the entry of temporary injunctions during the pendency of administrative reviews. *Id* at 1206 to 1207.

**JURISDICTION AND VENUE**

9. The Plaintiffs bring this action based upon their disqualification from eligibility to participate in the Supplemental Nutrition Assistance Program, as codified by Congress in 7 U.S.C. §§ 2011 – 2036(c).

10. This Court has subject matter jurisdiction over the matters raised by the Plaintiffs in this case pursuant to 7 U.S.C. §2023(17), and 7 C.F.R. §279.7. Furthermore, 28 U.S.C. §1331 gives this Court original jurisdiction over civil actions arising under the laws of the United States, for which the aforementioned statute and regulation qualify.

11. Venue is appropriate in this District pursuant to 7 C.F.R.§279.7(a), 7 U.S.C. §2023(13) and 28 U.S.C. §1391(b) as Plaintiffs' business was owned and operated in San Antonio, Bexar County, Texas, and because the facts giving rise the circumstances herein occurred in the Western District of Texas.

**PARTIES**

12. The Plaintiff, GEVERS INVESTMENT, INC., a Texas Corporation d/b/a STANLY'S ICE HOUSE, is a Texas corporation, and operates at 2403 E. Commerce Street, San Antonio, Texas 78203. Stanly's is referred to herein with the other Plaintiffs collectively as "Stanly's".

13. The Plaintiff, JAMAL SHADOUH, an Individual, is a natural person, and a resident of San Antonio, Texas. Mr. Shadouh is referred to collectively with the other Plaintiffs as "Stanly's" herein.

14. The Defendant, the UNITED STATES OF AMERICA, acting through its agency, the United States Department of Agriculture (hereinafter referred to as the "USDA" or "Department"), and its subservice, the Food and Nutrition Service. The Defendant may be referred to herein as "the Government" or "the Department".

**GENERAL ALLEGATIONS**

15. SNAP is a government program operated pursuant to Title 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

16. The general purpose of SNAP is to provide food benefits (formerly "food stamps") to program participants who meet certain financial need requirements. SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based upon the needs of their household. These benefits are transmitted to, and utilized by the participant, through an Electronic Benefits Transfer (EBT) card, which conceptually functions similar to a debit card.

17. The benefits are to be used by the participant only for the purchase of food and other eligible items sold by approved SNAP retailer, such as Stanly's.

18. In turn, SNAP retailers are governed by the Defendant through 7 C.F.R. §278.6 which in pertinent part permits the disqualification or suspension of retailers who violate SNAP regulations.

19. Significantly, SNAP violations on the part of retailers typically occur in two areas: (1) the sale of ineligible items to SNAP participants (using their EBT benefits), and (2) trafficking in SNAP benefits.

20. The term "trafficking" is defined at length by 7 C.F.R. §271.2, which states in pertinent part that trafficking is:

> "(1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal

identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone;

(2) The exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for SNAP benefits;

(3) Purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount;

(4) Purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or

(5) Intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food;

(6) Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signatures, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone."

See 7 C.F.R. §271.2 (2016)

21. While most of 7 C.F.R. §278.6 sets forth a graduated scale for punishment of SNAP retailers for the sale of ineligible items, trafficking is treated more harshly. Specifically, if a retailer is found to be trafficking in SNAP benefits, it (more specifically, the individual(s) who has applied for SNAP participation) is permanently disqualified from participation in the program, and may be issued a Transfer Civil Money Penalty ("Transfer CMP") of $11,000.00 per violation. FNS also adds the retailer and its owner(s) and officer(s) to the federal database list of disqualified persons without notice or opportunity to appeal or be heard.

22. In this matter the government maintains that there were two violations.

23. The Transfer CMP itself is not immediately assessed against the retailer, but instead is held in abeyance until the retail store is sold (regardless of the period of time intervening between

the permanent disqualification and the sale), and then assessed against the individual(s) who were the applicants on behalf of the store.

24. Such are the circumstances of this case. The Plaintiffs have been permanently disqualified by the Defendant, resulting in damage to the Plaintiffs and a potential future fine.

## **ERRORS & OMISSIONS ON THE PART OF THE DEFENDANT**

25. In the instant case, the Plaintiffs did not engage in trafficking in SNAP benefits, and have defended against the allegations accordingly.

26. The Defendant lacks any direct evidence (eye-witness accounts, receipts, or the like) that trafficking occurred.

27. Instead, the Defendant based its disqualification upon data analysis, which is circumstantial by definition: evidence from which more than one logical conclusion can be reached.[2]

28. Each of the 271 transactions set forth in the Charging Letter were categorized and selected by the Defendant's ALERT System computer program, which identifies specific transaction types, including two of which are addressed herein:

   a. "Multiple transactions were made from the accounts of individual SNAP households within a set time period"; and

   b. "Excessively Large" purchase transactions made from recipient accounts.

29. The Department does not have any statistical studies, data analysis, or supporting evidence to show that either of the two of those categories to the SNAP violation of "trafficking." In fact, the Defendants' Rule 30(b)(6) witness, Mr. Douglas Wilson, has previously testified on

---

[2] This reference is drawn from *Chief Counsel Advisory*, IRS CCA 200912021, though it is perhaps the best succinct definition of the term.

multiple occasions that those transaction categories are merely suspicious, and not in-and-of-themselves, indicative of trafficking.[3]

30. Furthermore, Mr. Wilson, as the Government's Rule 30(b)(6) witness with the most knowledge of the ALERT system, indicated that the categories and transactions cannot distinguish between different SNAP violation types (such as trafficking, issuance of credit, and sale of ineligible items).

31. There is no statistically meaningful correlation between the two transaction categories and the act of "trafficking."

32. Despite this, cases using the ALERT system's categories are referred to FNS' Investigative Analysis Branch (IAB) for investigation and prosecution.

33. This instant matter was just such a case, referred to IAB Section Chief Mr. Fredrick Conn's division for evaluation and prosecution. Mr. Conn was the Section Chief that issued the permanent disqualification in this case.

34. This process is not an impartial one, nor is it unbiased. As a rule, every single case referred to the IAB for data analysis is charged with trafficking in SNAP benefits.

35. Of the thousands of cases handled every year, the IAB makes a finding of trafficking in nearly all (between 95% and 100% depending upon the section) of the cases. There is no impartiality in this process. It is an assembly line.

36. The Defendant, in this case did little in way of investigation to support its position that trafficking was more likely than not the cause of trafficking. Keeping in mind that as of this filing, the Plaintiffs **have never seen the Administrative Record** (this is not an exhaustive list of

---

[3] Mr. Wilson's Deposition transcripts are the result of other Judicial SNAP reviews pertaining to trafficking and data analysis. The Plaintiffs will separately produce them to the Defendant, and present as necessary to this Court. However, attachment to this Complaint would be unnecessary and redundant.

the failures on the party of the Defendant's data analysis):

    a. The Defendant did not interview the households engaged in the transactions, despite having the ability to do so;

    b. The Defendant continued to rely upon data comparison with other stores that differ materially in business for a variety of reasons; and

    c. The Defendant did not conduct any research on household shopping and spending habits, specifically with the effect on participants' store loyalty, item selection, purchase transaction frequency and transaction sizes.

37. At the initial stages of the Administrative Decision, it is the Government's burden to prove by a preponderance of the evidence that it is more likely than not that trafficking had occurred.[4]

38. The Government did not (and does not) have sufficient evidence to meet that burden, or to link the transactions to trafficking. For purposes of a judicial review, the burden does switch to the Plaintiff (though it has not gotten that far yet) and for purposes of this matter, the Plaintiff does bear the burden of proof.

### PLAINTIFFS' ALLEGATIONS

39. The Plaintiffs do not have access to the Administrative Record. At no point in this process have the Plaintiffs been given access to any records (aside from the Charge Letter and the Initial Disqualification Letter) relied upon by the Department in its analysis.[5]

40. Furthermore, there have been no decisions made by Administrative Law Judges, Department Attorneys or other legal-trained individuals who could adequately weigh the evidence before the Department during the administrative process to date.

---

[4] On Judicial Appeal, the burden rests with the Plaintiffs.
[5] FOIA requests can be and have been made, but they produce documents that are almost entirely redacted.

41. What little Due Process actually exist in this process is borne out only here, at the Judicial Review stage of the case.

42. The Plaintiff's transactions were bonafide purchases of food items, in exchange for SNAP benefits as the system was intended, albeit not necessarily with the timing or amounts preferred by the Department.

43. However, the shopping habits of SNAP participants in the store are consistent with the transactions listed, and the Plaintiffs anticipate such testimony from these households.

44. The Plaintiffs' explanations for the transactions, as set forth in their Administrative Brief, are consistent with the actual shopping habits and trends that occur in the store.

45. In any case, the Store was not at any point in time, engaged in trafficking SNAP benefits.

## COUNT I: REQUEST FOR TEMPORARY INJUNCTION

46. The Plaintiffs incorporate and restate each and every paragraph set forth above as though fully set forth herein.

47. The Plaintiffs, pursuant to 7 U.S.C. §2023(17), *seek only the entry of an injunction against the Defendant* as contemplated and utilized in the *Lazaro*, supra.

48. The Plaintiffs have fully participated in the administrative action to this point, but are left at the whim of the Defendant as to when the final decision will be made – a circumstance complicated by the present Government shutdown. There are no regulations pertaining to how long the Department can wait to issue a decision, and the undersigned counsel is aware of a number of cases in which the delay between issuance of the appellant's final brief and the agency's decision has been half-a-year or longer.

49. However, the Plaintiffs' business is in such dire straights that it will not survive

such a delay – rendering any result (positive or otherwise) as moot and irrelevant and otherwise defeating the purpose of the administrative and judicial review.

50. As such, this injunction is sought only through the term of the Administrative Review.

51. Under the analysis outlined by Congress in 7 U.S.C. §2023(17), the Plaintiffs bear the burden of showing: (1) a likelihood of prevailing; and (2) irreparable harm. To this end, the Plaintiffs assert the following:

   a. Likelihood of Prevailing:
      i. The Government's allegations are based entirely upon circumstantial data analysis. This is outlined in the Charge Letter attached hereto as **Exhibit A**.
      ii. The Government does not disclose the administrative record to the Plaintiff at any point during the administrative proceedings. However, upon information and belief, the Plaintiffs assert that the Government compared its SNAP transactions to those of the other similarly situated SNAP retailers immediately around it.
      iii. To this end, the Government has determined that two transaction patterns indicate (to them) that trafficking is occurring: (1) too many transactions made within a set time period; and (2) "excessively large" transactions have been occurring at the store.
      iv. There are no regulations restricting the frequency in which the transactions can occur, nor are there regulations restricting the size of the transactions.

    v. Quite the opposite, 7 C.F.R. §278.2 requires the retailer to process any transaction (for eligible food) that he/she would normally accept in cash.

    vi. Accordingly, the SNAP retailer doesn't have meaningful control over what transactions he/she runs as very few circumstances would arise where he/she would decline a cash sale for inventory/merchandise.

    vii. <u>Too Many Transactions in a set time:</u> This will be explained further in a correlating Motion that will be filed separately hereunder. However, the following (brief) explanations are how the patterns came about:

        1. <u>Transaction Receipts:</u> The Plaintiffs have nearly copies of all of the transaction receipts (which will be attached to the motion). These receipts show that the transactions were legitimate purchases of eligible items, and not falsely generated for purposes of trafficking.

        2. <u>Co-Shopping:</u> Many SNAP households have limited access to transportation, so they shop in groups and often with multiple adults. In these cases, households will portion their benefits amongst the adults, and conduct separate transactions for accounting purposes – thus producing more purchases than anticipated in shorter times.

        3. <u>Supplemental Shopping Trips:</u> The Plaintiff's customers will occasionally make purchases, and because of convenience, determine that they need to return to the store to purchase more items.

  4. <u>Habitual Shoppers:</u> Other SNAP participant customers frequent the store because of comfort, loyalty or habit. These customers will make purchases at Stanley's because it isn't nearly the hassle that is involved in bigger stores. Accordingly, they work Stanley's into their regular (sometimes daily) shopping routines, resulting in more transactions.

viii. <u>"Excessively Large" Purchases</u>

  1. <u>Transaction Receipts:</u> The largest purchase the Defendant cites as "excessively large" is $79.00. The designation of these transactions is essentially arbitrary, but the Plaintiff has possession of a number of transaction receipts from these purchases, showing the participants buying a number of eligible items for totals that the Department qualifies as "excessively large." The receipts show that legitimate purchases can happen in those amounts.

  2. <u>The Departments' Inventory:</u> The Department conducted an inventory of the Plaintiffs' prior to the issuance of the Charge Letter. This inventory indicates that the Plaintiff's store has sufficient inventory to satisfy purchases in the amount of $79.00, if not far more.

  3. <u>Co-Shopping Strikes Again:</u> As mentioned above, some SNAP households shop together with multiple adults attending and selecting items. These participants do not always separate their

purchases, and when they are made in combination, it logically causes the transactions to grow in size.

4. <u>Convenience</u>: The SNAP participants value convenience, and Stanley's provides that. So, purchases which are made for convenience and snack food often occur at Stanley's. A review of the receipts shows that even the $70+ transactions are rife with launchables, chips, soda, jerkey and candies/cookies.

ix. The purchases upon which the transaction patterns were based, are legitimate purchases, as demonstrated by the receipts. Therefore, the Plaintiffs have a likelihood of prevailing, as the Defendant's circumstantial evidence is trumped by the direct documentary evidence from the store.

b. <u>Irreparable Harm</u>:

i. Stanley's is about to go out of business. The store relied heavily on the SNAP sales to keep its numbers in the black, and often ran on a net monthly profit of less than ten thousand (set against gross sales of more than $100,000.00/month).

ii. Of the sales, Stanley's EBT transactions accounted for between $6,000 and $8,600 of their monthly sales. EBT participants ineligible purchases (purchases made with debit, cash or credit including gasoline, tobacco, alcohol, miscellaneous items) amounted to at least another $3,000 to $5,000.

iii. Stanley's lost it's EBT in August of 2018 and has thereafter taken more

than $10,000 in losses every month since then.

iv. The store lacks the ability to survive much longer taking $10,000.00 per month losses.

v. Two employees have already been let go, and the store has proverbially tightened the belt to the last hole.

vi. Without entry of the injunction, the store will go out of business, and when it is eventually exonerated, the Government will have cost the company its very existence.

vii. Such loss can only be termed "irreparable."

WHEREFORE, the Plaintiffs, GEVERS INVESTMENT, INC., a Texas Corporation d/b/a STANLY'S ICE HOUSE, and JAMAL SHADOUH, an Individual, respectfully ask this Court to enter a temporary injunction against the Defendant so as to reinstate the Plaintiff's SNAP retail license during the pendency of the Administrative Review.

Dated: January 25, 2019

Respectfully submitted,

_/s/ Andrew Z. Tapp_

ANDREW Z. TAPP, ESQ.
Metropolitan Law Group, PLLC
Florida Bar No.: 68001
1971 W. Lumsden Rd., #326
Brandon, Florida 33511
Telephone: 813-228-0658
Facsimile: 813-330-3129
Email: Andrew@Metropolitan.Legal
*Pro Hac Vice* Applicant